UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

**Hearing Date: November 12, 2026 at 10:00 a.m.**
**Objection Date: November 5, 2026**

In Re:

THE COOKIE FACTORY, LLC,

Debtor.

Chapter 7
Case No. 24-11002-rel

**MOTION FOR ORDER (I) APPROVING SETTLEMENT PURSUANT TO F.R.B.P. 9019; AND (II) AUTHORIZING TRUSTEE TO ABANDON DEBTOR'S REMAINING ASSETS UNDER 11 U.S.C. § 544**

Philip J. Danaher, Esq., Chapter 7 Trustee for The Cookie Factory, LLC (the "Trustee"), by and through his Special Counsel, Lippes Mathias, LLP, respectfully moves this Court for an Order, pursuant to Bankruptcy Rule 9019(a) and 11 U.S.C. § 544, approving a settlement and compromise in the above-captioned bankruptcy case and authorizing the Trustee to abandon Debtor's remaining assets, not otherwise addressed in the Settlement Agreement, and in support thereof, states the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.
2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).
3. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

4. Since 2006, Debtor, The Cookie Factory, LLC ("Debtor"), has become a well-known local bakery, family owned and operated by brothers, Christopher Alberino ("C. Alberino") and Joseph Alberino ("J. Alberino") (C. Alberino and J. Alberino will collectively be referred to herein as the "Alberinos"), each having a 50% ownership in the Debtor.

5. In addition to baking millions of cookies, pastries, cakes and breads for the local

community, Debtor's cookies were also shipped nationwide and on the shelves of numerous supermarkets.

6. Prior to Debtor's formation, the Alberinos, through their respective Wyoming limited liability companies, JJALB, LLC (J. Alberino) and CHMIALB, LLC (C.Alberino) (collectively, the Alberinos' "Wyoming Entities") had trademarked "The Cookie Factory" which they in turn licensed to the Debtor on or about December 9, 2006.

7. Upon information and belief, in the years preceding the underlying bankruptcy filing, the Alberinos and Debtor transferred funds back and forth purportedly as "loans" and "loan repayment" transfers, none of which were formally documented (collectively the "Loan Transfers").

8. On or about May 15, 2023, the Alberinos' Wyoming Entities formed 3 Partners Pastry, LLC ("3PP").

9. On or about May 16, 2023, the Alberinos, as members of the Debtor, transferred certain personal property assets of the Debtor (such as bakery equipment and other tangible personal property) to themselves as a "loan repayment transfer" (hereinafter, "Loan Repayment Transfer"). A true and correct copy of the *Unanimous Resolution and Consent of Members Loan Repayment Transfer* is attached hereto as **Exhibit A**.

10. On or about May 18, 2023, the Alberinos' Wyoming Entities terminated the Trademark Agreement with the Debtor and licensed it to 3PP and, upon information and belief, transferred the Loan Repayment Transfer to 3PP (the "3PP Transfers").

11. Debtor remained in ownership of its business and business assets not otherwise included in the Loan Repayment Transfer (such as Debtor's recipes, commercial contacts, inventory, logos, bank accounts, etc.).

12. On September 10, 2024 (the "Petition Date"), the Debtor filed a voluntary petition (the

"Petition") for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") for the Northern District of New York (the "Bankruptcy Court").

13. Lippes Mathias LLP was appointed as Special Counsel to prior Chapter 7 Trustee, Marc S. Ehrlich on March 4, 2025 (see ECF Doc 46). The Trustee was appointed as Successor Interim Chapter 7 Trustee for the Debtor's estate on January 7, 2026, and continued retention of Lippes Mathias LLP as his Special Counsel.

14. To further complicate matters, the Alberinos and/or 3PP continue to operate the business post-petition using Debtor's recipes under Debtor's name and logo.

15. After extensive review of the Debtor's and Alberinos' books and records (including statements for fourteen (14) different bank accounts) the Trustee asserts that the Alberinos received one or more transfer (the "Alberino Transfers") from the Debtor of no less than $170,440.26 on or within two (2) years before the Debtor's Petition Date. Additionally, pursuant to an appraisal report, the liquidation value of the business equipment (aka the Loan Repayment Transfer) ultimately received by 3PP equals $50,075.

16. Special Counsel to the Trustee investigated the collectability of any potential judgment against the Alberinos and 3PP. Judgment collection against these potential defendants will be challenging.

17. After months of discovery exchange and negotiations between counsel for the Alberinos, 3PP and the Trustee, the parties have negotiated a compromise and settlement at arms' length and in good faith, in the amount of $130,000 (the "Settlement"), the terms of which are more fully set forth in the Affidavit of Philip Danaher, Esq. (the "Danaher Aff.") submitted contemporaneously with this motion.

18. All remaining assets of the Debtor, including all those listed on filed Schedules A/B,

have been evaluated by the Trustee and deemed to be of little to no economic value to the Estate.

## RELIEF REQUESTED

19. A bankruptcy court may approve a compromise and settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 if it finds that the settlement "is fair and equitable and in the best interests of the estate". *In re Transfix Productions LLC*, No. 23-11283 (JLG), 2025 WL 2753690 (Bankr. S.D.N.Y. Sept. 26, 2025) (quoting *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968)).

20. As a general matter "[s]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re DiStefano*, 654 B.R. 49, 54 (Bankr. N.D.N.Y. 2023) (quoting *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (S.D.N.Y. 2012)).

21. The Court's responsibility is "...to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness'". *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d. Cir. 1983) (citing *Newman v. Stein,* 464 F.2d 689, 693 (2 Cir.), *cert. denied sub nom. Benson v. Newman,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972)).

22. The Second Circuit summarized the factors (known as the "*Iridium* Factors") that a court must consider when deciding whether a settlement falls above or below the lowest point in the range of reasonableness as follows:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
>
> (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";

(4) whether other parties in interest support the settlement;

(5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;

(6) "the nature and breadth of releases to be obtained by officers and directors"; and

(7) "the extent to which the settlement is the product of arm's length bargaining."

*In re DiStefano*, 654 B.R. 49, 54 (Bankr. N.D.N.Y. 2023) (quoting *In re Allard*, No. 18-14092, 2021 WL 2546668 at *7, 2021 Bankr. LEXIS 1634 (Bankr. S.D.N.Y. June 21, 2021) quoting *In re Iridium Operating LLC,* 478 F.3d at 462 (2d Cir. 2007)).

23. The Settlement supported by this Trustee carefully evaluated the likelihood of success of litigation against the collectability of any potential judgment versus the time value of the immediate Settlement payment. The Trustee believes that the administrative expenses of protracted litigation will swallow any potential distribution to unsecured creditors of this Debtor. The Trustee has decades of experience in litigating and settling fraudulent conveyance claims and utilizes his best business judgment to recommend this Settlement as a fair and reasonable result. The releases to officers and directors are in direct exchange for their financial contribution to the Settlement. All defendants were represented by experienced bankruptcy counsel. Accordingly, the Trustee asserts that the Settlement meets all of the *Iridium* Factors. *In re Iridium*, 478 F.3d at 462.

24. If the Court finds that "most or all of the [Iridium Factors] are satisfied, the settlement should be approved." *In re Transfix Productions LLC*, 2025 WL 2753690, at *6 (Bankr. S.D.N.Y. 2025) (quoting *In re 305 E. 61st St. Grp. LLC*, No. 19-11911, 2022 WL 16749111, at *3 (Bankr. S.D.N.Y. Nov. 7, 2022)).

25. Courts have found "[t]he balance between the likelihood and benefits of a successful outcome in litigation and the benefit of the proposed settlement is 'perhaps the most important factor

to be considered in assessing a proposed settlement'." *In re DiStefano*, 654 B.R. 49, 55 (Bankr. N.D.N.Y. 2023) (quoting *In re LATAM Airlines Grp. S.A.,* No. 20-11254 (JLG), 2022 WL 272167, at *21 (Bankr. S.D.N.Y. Jan. 28, 2022) (citations omitted)).

26. As noted in *Adelphia Communication*s, the legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the "best interests of the estate." *In re Adelphia Commc'ns Corp.,* 327 B.R. 143, 158 (Bankr. S.D.N.Y.), *adhered to on reconsideration,* 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

27. To determine that a settlement is in the best interests of the estate, the Supreme Court held in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968) (*"TMT"*), that the settlement must be "fair and equitable." *Id.* at 424, 88 S.Ct. 1157. Such a finding is to be based on "the probabilities of ultimate success should the claim be litigated," and:

> [A]n educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Id.* at 424–25, 88 S.Ct. 1157. *See also Purofied Down Products, 150 B.R. at 523; Official Comm. of Unsecured Creditors of Int'l Distrib. Ctrs., Inc. v. James Talcott, Inc. (In re Int'l Distrib. Ctrs., Inc.),* 103 B.R. 420, 422 (S.D.N.Y.1989) (Conboy, J.) ("International Distribution Centers") (determination as to whether proposed compromise is fair and equitable requires exercise of informed, independent judgment by court).

28. However, the settlement need not be the best that the Debtor could have obtained.

"Indeed, a court may approve a settlement even if it believes that the Trustee ultimately would be successful". *In re Int'l Distribution Centers, Inc.*, 103 B.R. 420 (S.D.N.Y. 1989 ) (quoting *In re Teltronics Services, Inc.,* 46 B.R. 426 (E.D.N.Y.1984), *aff'd,* 762 F.2d 185 (2d Cir.1985)). The Trustee here believes he could be ultimately successful if suit went to trial, however the defendants do not appear likely to have the resources to satisfy any substantial judgment.

29. "[T]here is a range of reasonableness with respect to a settlement —a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion—and the judge will not be reversed if the appellate court concludes that the settlement lies within that range." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.) (Friendly, J.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972).

30. It is not necessary for the Court to conduct a "mini-trial but only needs to 'be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment.' " *Id.* (quoting *In re Residential Cap., LLC*, 497 B.R. 720, 749 (Bankr. S.D.N.Y. 2013)).

31. In doing so, the court is permitted to rely upon "opinions of the trustee, the parties, and their attorneys." *International Distribution Centers,* 103 B.R. at 423.

32. The Settlement Agreement calls for prompt payment by the parties in the amount of $130,000 which is an approximate 59% recovery of the Alberinos & 3PP Transfers and business equipment that will be available to the Debtor's estate for distribution. Prompt payment and an expedited resolution benefits all creditors of the Debtor's estate.

33. "[T]he Second Circuit has held that 'the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed

settlement is grossly inadequate and should be disapproved.'" *In re DiStefano*, 654 B.R. 49, 57 (Bankr. N.D.N.Y. 2023) (quoting *Guevoura Fund Ltd. v. Sillerman*, No. 18-cv-09784, 2019 WL 6889901, at *10, 2019 U.S. Dist. LEXIS 218116, at *29 (S.D.N.Y. Dec. 18, 2019) (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974)) (approving a 57% recovery settlement); *see also In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557, 2014 WL 7323417, at *8, 2014 U.S. Dist. LEXIS 177175, at *25 (S.D.N.Y. Dec. 19, 2014) (approving settlement with 36% recovery); *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *9–10, 2014 U.S. Dist. LEXIS 64517, at *26-28 (S.D.N.Y. May 9, 2014) (approving settlement in the recovery range of 9.2% to 21% of estimated damages); *In re Veeco Instruments Secs. Litig.*, No. 05 MDL 01695, 2007 WL 4115808, at *13, 2007 U.S. Dist. LEXIS 85629, at *35 (S.D.N.Y. Nov. 7, 2007) (approving settlement with 23.2% recovery); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. Jan. 29, 2002) (approving settlement with 41% recovery).

34. The Trustee submits that the Trustee's settlement of the Alberinos & 3PP transfers, as proposed herein, falls within the range of reasonableness. See also Danaher Aff.

35. Additionally, the Trustee believes that the settlement of the Alberinos & 3PP transfers is fair and reasonable, and in the best interest of the Debtor's estate and unsecured creditors.

36. By this Motion, the Trustee also seeks authority from this Court to abandon all other assets of the Debtor, not otherwise addressed in the Settlement Agreement. The Trustee has evaluated the remaining assets of the estate and determined those to be of *de minimis* value.

37. Accordingly, it is respectfully requested that the Court approve the Trustee's settlement.

**WHEREFORE**, the Trustee requests that the Court enter an Order (a) approving the settlement and compromise between the Trustee and Christopher Alberino, Joseph Alberino and 3

Partners Pastry, LLC as provided herein; (b) authorizing the Trustee to abandon the remaining assets of the Debtor; and (c) for such other and further relief as to the Court may deem just and proper.

Dated: September 29, 2026
Albany, New York

Leigh A. Hoffman, Esq.
LIPPES MATHIAS, LLP
*Counsel to Chapter 7 Trustee*, *Philip J. Danaher*
677 Broadway, 6th Floor
Albany, NY 12207
Tel.: (518) 462-0110
Email: lhoffman@lippes.com